UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. CR 15-0028 |
| v. | : | Filed: January 26, 2015 |
| ESPAR INC., | : | Violation: 15 U.S.C. § 1 |
| Defendant. | : | |

------------------------------------------------------------- x

## JOINT MEMORANDUM IN SUPPORT OF PLEA AGREEMENT

The United States and Defendant Espar Inc. ("Defendant") submit this joint memorandum to address questions raised by the Court regarding how certain terms in the parties' Plea Agreement will be executed. The parties respectfully request that the Court accept the executed Plea Agreement and sentence Defendant according to its terms. Defendant's sentencing is scheduled for June 5, 2015, at 2:30 p.m.

### I. Background

During a hearing before the Court on March 12, 2015, the parties submitted for the Court's approval an executed Plea Agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The Plea Agreement sets forth the parties' jointly recommended sentence, which would require Defendant to pay a criminal fine of $14,970,000. (Plea Agreement, ¶ 9.)[1]

---

[1] The Plea Agreement does not provide for restitution for victims, which is not mandated for Title 15 offenses. The parties respectfully submit that the civil lawsuits – five of which have been filed since Defendant's plea on March 12, 2015 – present ample opportunity for victims to be compensated for any damages they may have suffered. Those cases are: *Raccoon Valley Transport Inc. et al. v. Espar Inc.*, No. 15 Civ. 01338 (E.D.N.Y Mar. 16, 2015); *Triple Cities Acquisition, LLC d/b/a Cook Brothers Truck Parts v. Espar, Inc. and Espar Products, Inc.*, No. 15 Civ. 01343 (E.D.N.Y March 16, 2015); *Regional International Corp. v. Espar, Inc. et al.*, No. 15 Civ. 1798 (E.D.N.Y. Apr. 2, 2015); *National Trucking Reclamation Services v. Espar, Inc. et al.*, No. 15 Civ. 2310 (E.D.N.Y. Apr. 22, 2015); *Trailer Craft Inc. v. Espar Inc. et al*, No. 15 Civ. 2411 (E.D.N.Y. Apr. 28, 2015).

In paragraph 13, the Plea Agreement also memorializes Defendant's agreement to continue cooperating with the Government. This includes "securing the full, truthful, and continuing cooperation" of its employees – excluding any current or former employee listed in Attachment A to the Plea Agreement, which was filed under seal. (*Id.*, ¶ 13(b).)

The Plea Agreement then sets forth the Government's agreement – subject to the imposition of the recommended sentence – that it will not bring further charges against Defendant or its Related Entities for any act or offense committed before the date of the Plea Agreement undertaken in furtherance of an antitrust conspiracy involving the sale of parking heaters in the United States and elsewhere in North America. This non-prosecution agreement extends to Defendant's current employees (current as of the date of the Plea Agreement), except those listed in Attachment A, so long as the employees cooperate fully and truthfully with the Government if requested to do so. (*Id.*, ¶¶ 15, 16 (a), 16(c).)[2] Attachment A, filed under seal, identifies certain uncharged current and former employees of Defendant who are excluded from this non-prosecution protection and from the cooperation obligation because they are potential targets of the Government's investigation. In addition to the grant of transactional immunity, the Government further agrees that it will not use any information provided by a cooperating employee against that employee in a criminal case.[3] (*Id.*, ¶¶ 16 (d), 16(e).)

---

The Plea Agreement also does not provide for a period of probation for Defendant. Although the Government does seek probation in certain cases, including as part of plea agreements under FRCP 11(c)(1)(C), it did not do so here, for two reasons. First, as of the date the plea agreement was signed, none of the individuals that the Government had identified as culpable in the conspiracy remained employed by Defendant in positions in which they had significant power over Defendant's pricing of parking heaters. Second, Defendant does not seek an extended period of time for payment of the agreed-upon criminal fine.

[2] The Government's non-prosecution agreement does not apply to civil matters of any kind; any violation of the federal tax or securities laws, or conspiracy to commit such offenses; any crime of violence; perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

[3] The limited exceptions listed in footnote 2 *supra* also apply to the Government's offer of use immunity.

The Plea Agreement thereby gives full immunity to Defendant, its Related Entities, and covered employees, subject to their continued adherence to the cooperation agreement and other terms of the Plea Agreement. This structure offers a significant benefit to the corporation and to covered employees, sparing the latter from each having to negotiate separate non-prosecution agreements with the Government.

On March 12, 2015, Defendant appeared before the Court, was arraigned, waived an indictment, and pleaded guilty to the charge in the Information. At the hearing, the Court ordered a presentence investigation report ("PSR") from the U.S. Probation Office to enable it to evaluate the agreed-upon sentence.[4] The parties have submitted all information requested by the Probation Office, which will provide the Court with a PSR prior to sentencing.

The Court also directed the parties to file a submission by May 22, 2015 addressing two issues concerning the Plea Agreement: (1) how Defendant would satisfy its obligation under paragraph 13(b) of the Plea Agreement to "secure[] the full, truthful, and continuing cooperation" of all directors, employees, and officers and, at the same time, not coerce any employee into waiving his or her Fifth Amendment rights against self-incrimination; and (2) the sufficiency of the Government's offer of use immunity to Defendant's employees under paragraph 16(d) of the Plea Agreement. *See* March 10, 2015 Order, Docket Entry 9 ("March 10th Order"); Transcript of Proceedings on March 12, 2015, Docket Entry 17, at 26:16-29:9. This joint memorandum addresses the two issues the Court raised.

## II.     The Plea Agreement Will Not Lead to Economic Coercion

Paragraph 13(b) of the Plea Agreement requires Defendant to "secur[e] the full, truthful, and continuing cooperation…of current directors, officers, and employees" except those listed in

---

[4] The parties respectfully contend that the PSR, along with the other filings in this matter, should provide the Court with sufficient information to meaningfully exercise its sentencing authority pursuant to 18 U.S.C. 3553 and accept the proposed Plea Agreement with the parties' agreed-upon sentence.

3

Attachment A. In its March 10th Order, the Court expressed concern that "[t]he manner in which Espar fulfills its obligation [under paragraph 13(b)] and the sanctions the individuals face if they choose not to cooperate may raise Fifth Amendment concerns." The Court seeks assurance that the Defendant would not use or be incentivized to use economic coercion – such as threatening to take adverse employment action – to secure its employees' cooperation, and that the Defendant's employees understand that their jobs remain secure if and when they are asked to cooperate. (Transcript of Proceedings on March 12, 2015, Docket Entry 17, at 26:16-29:9.) For the reasons detailed below, the Defendant's agreement to secure the cooperation of its employees was not designed or drafted to encourage economic coercion of Defendant's employees. Defendant can fully discharge its cooperation obligations to the Government without exerting such economic pressure.

The Court's concern appears to spring from *United States v. Stein*, 440 F. Supp. 2d 315 (S.D.N.Y. 2006). In *Stein*, the government threatened to indict KPMG if the company did not cooperate with its investigation and further threatened to "consider any failure by KPMG to cause its employees to make full disclosure to the government as favoring indictment." *Id.* at 318. While it was KPMG's common practice to pay its employees' legal fees for legal matters arising out of their work, the government threatened to consider such payments as a factor weighing against KPMG's cooperation. *Id.* In response to the government's pressure, KPMG "threatened to cease payments of [its employees'] attorney fees and (if applicable) to take certain personnel action, including termination" if an employee did not cooperate to the government's satisfaction. *Id.* at 323-24. The *Stein* court found that such economic coercion resulted in two KPMG employees – who were later indicted – making self-incriminating statements to the government that they would not otherwise have made. *Id.* at 337-38.

4

Here, the Plea Agreement terms do not state, expressly or implicitly, that the Government expects the Defendant to use any form of economic coercion to secure the cooperation of its employees in order to satisfy its own cooperation obligation. Indeed, the Department of Justice expressly forbids one of the troubling practices in *Stein* – *i.e.*, taking into account whether a corporation reimburses attorneys' fees or provides counsel to employees when evaluating the company's cooperation. *See* U.S. Attorney's Office Manual, Principles of Federal Prosecution of Business Organizations, § 9-28.730, available at: http://www.justice.gov/usam/usam-9-28000-principles-federal-prosecution-business-organizations.

Rather, the Government has interpreted and will continue to interpret the language in paragraph 13(b) of the Plea Agreement as requiring the Defendant to use its "best efforts" to secure its employees' cooperation, but not by any extraordinary, coercive, or illegal means. Defendant fully concurs with this interpretation. If the Government requests that a particular current employee be interviewed by prosecutors, Defendant hereby represents that it will use its "best efforts," appropriate under the circumstances, to allow that interview to happen, including but not limited to: (1) contacting the employee and explaining that her cooperation is requested by the Government and what such cooperation would entail; (2) encouraging the employee's voluntary cooperation by, for example, letting her have time off from work to meet with the Government; (3) providing a copy of the Plea Agreement to the employee (excluding Attachment A, which has been filed under seal), and (4) explaining that the employee will receive immunity under the terms of the Plea Agreement if she fully and truthfully cooperates with the Government.

To further assure the Court that paragraph 13(b) of the Plea Agreement will not result in coercion of employees to cooperate with the Government against their will, Defendant will

5

provide to all employees whose cooperation is sought by the Government the following written statement:

> The Company (Espar and its Related Entities) has received a request from the United States Government for you to cooperate as part of the Plea Agreement entered into by Espar Inc.  A copy of the Plea Agreement has been provided to you.  The Company encourages you to cooperate, and will provide you time off from work, and make other arrangements, to allow you to meet with the Government.  If you cooperate fully and truthfully with the Government, you will receive immunity from prosecution from possible criminal charges in connection with DOJ's antitrust investigation regarding parking heaters pursuant to the terms of the Plea Agreement.  If you decide not to cooperate, you will not receive such immunity.  However, whether you cooperate with the Government is your decision, and your decision alone; you are not required to cooperate.  The Company will take no adverse employment action against you solely as a result of your decision to cooperate or not to cooperate, or continue cooperating, with the Government.  In addition, the Government has represented to the Court that Espar and its Related Entities will not be in breach of the Plea Agreement if you choose not to cooperate solely because you choose not to cooperate.  The Government is aware that this letter will be provided to all employees whose cooperation it seeks.

The Government is satisfied that, under the circumstances of this case, if Defendant follows the steps outlined above to give the Government access to the employee and yet the employee refuses to sit for the interview or otherwise expresses unwillingness to cooperate with the Government – even with the protections afforded to that employee under the Plea Agreement – Defendant and its Related Entities would not be in breach of their cooperation obligations.  At that point, the Plea Agreement would simply no longer operate as to that employee; that is, he or she would no longer be afforded any transactional or use immunity under the Plea Agreement, but also would have no obligation to cooperate with the Government.  If the employee chooses, he or she could seek to negotiate a separate agreement with the Government.

Finally, the parties note that the individuals listed in Attachment A to the Plea Agreement – who are potential targets of the Government's investigation – already are not subject to the

cooperation provisions of paragraph 13(b). Those employees have no obligation under the Plea Agreement to cooperate with the Government, and, under the express language of paragraph 13(b), Defendant has no obligation to attempt to secure their cooperation.

In sum, paragraph 13(b) of the Plea Agreement is not intended to and will not in practice result in economic coercion to secure the cooperation of Defendant's employees.

### III. The Plea Agreement Provides Full and Enforceable Immunity to Employees Who Voluntarily Cooperate

The Court's second concern, as expressed in its March 10th Order, is that the Plea Agreement provides a mere promise that employees' testimonial statements will not be used against them, instead of a statutory grant of immunity. The Court cited *United States v. Doe*, 465 U.S. 605 (1984), to suggest that this may be insufficient to address Fifth Amendment concerns. The Court also noted its concern that this promise of use immunity has been made only to Defendant, not to its employees, whose testimony may be compelled.

The parties respectfully submit that *Doe* is inapposite here. In *Doe*, the court held that a sole proprietor's production of documents in response to a grand jury subpoena was privileged and could not be compelled without a statutory grant of use immunity, notwithstanding promises made by the government before a district court that it would not use the sole proprietor's act of production against him in any way. As detailed above, Defendant's employees, unlike the sole proprietor, will not be compelled by either the Defendant or the Government to cooperate under the terms of the Plea Agreement. Rather, if an employee's cooperation is requested, the employee can decide whether she will provide full and truthful cooperation in exchange for full immunity – both transactional and use immunity – or instead decide not cooperate, in which case the transactional and use immunity provisions in paragraph 16 of the Plea Agreement will not apply to her.

The parties see no additional protection that statutory immunity would provide to employees that is not already provided by the transactional immunity in paragraph 16(a). If any covered employee is in good standing with respect to the terms of the Plea Agreement, by cooperating with the Government when requested, he or she may enforce the non-prosecution agreement from the Government in paragraph 16(a) as a matter of law. Defendants' covered employees are intended third-party beneficiaries of the Plea Agreement and may seek to enforce that agreement as they would any other binding contract made by a prosecutor. *See United States v. Pescatore,* 637 F.3d 128, 137 (2d Cir. 2011) (interpreting a plea agreement "in accordance with traditional principles of contract law"); *NAF Holdings LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740 (2d Cir. 2014) ("the doctrine of third-party beneficiary contract allows the benefitted third party also to sue to enforce the promise, notwithstanding that it was not a party to the contract").

In signing the Plea Agreement, the Government understood that in return for the covered employees' potential cooperation, it was providing full and enforceable immunity to those employees with respect to any Relevant Offense (as defined in paragraph 16(a)).

**Conclusion**

The United States and Defendant respectfully request that the PSR and the reasons set forth above provide a sufficient basis for the Court to accept the executed Plea Agreement and impose a sentence according to its terms.

Dated: May 21, 2015

Respectfully submitted,

/s/ Carrie A. Syme
Carrie A. Syme
Antonia R. Hill
Katherine H. Stella

Trial Attorneys
United States Department of Justice
Antitrust Division
26 Federal Plaza, Room 3630
New York, NY 10278
(212) 335-8036


/s/ Michael F. Tubach
Michael F. Tubach
O'Melveny & Myers LLP
Counsel for Espar Inc.